## PATTERSON v. KATES (two cases).

### (Circuit Court, E. D. Pennsylvania.   March 25, 1907.)

### Nos. 58, 59.

MASTER AND SERVANT—LIABILITY FOR SERVANT'S NEGLIGENCE—DEVIATION BY SERVANT FROM INSTRUCTIONS.

Defendant owned an automobile, which broke down on the way from Atlantic City to Philadelphia, and which he then left in charge of his driver, with directions to repair it and bring it on to Philadelphia. After the driver had reached the Delaware river, and while waiting for the ferry, he consented to take a third person in the machine to a place about a mile back on the road, and while making such trip, through his negligence in running too fast, he came into collision with a horse and buggy on the highway, by which plaintiffs were injured. *Held*, that under such facts defendant was not liable for the injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1223, 1224, 1229.]

On Motion for Judgment upon Reserved Point Notwithstanding the Verdict.

Stanley Williamson and John Boyd Avis, for plaintiffs.
Frank P. Prichard, for defendant.

J. B. McPHERSON, District Judge.   The defendant is the owner of an automobile, which had broken down at Egg Harbor, on the way from Atlantic City to Philadelphia.   He instructed his driver to repair the machine and bring it to its destination, and, in obedience to these instructions, the driver started from Egg Harbor, passed through Mt. Ephraim, and reached Gloucester, on the Delaware river, intending to take the ferry at that point for Philadelphia.   When he reached Gloucester, he went to a saloon kept by one of his friends, where he met a man named Fernley, who had business at Northmont, a small settlement about a mile back upon the road to Mt. Ephraim, and asked the driver to take him there in the machine.   The driver consented.   Two other persons accompanied Fernley, and the road toward Mt. Ephraim was thereupon retraced as far as Northmont, or perhaps a little farther. The machine was then turned about to go back to Gloucester, and, on the way, injury was done to the plaintiffs by the negligence of the driver. After regaining Gloucester, the driver resumed his journey to Philadelphia, where he arrived in due course.

There was no dispute about these facts, and with the assent of the parties the question of the driver's negligence was submitted to the jury, and the court reserved for its own determination, as a question of law, whether the defendant is liable for the driver's fault.   Obviously, he is liable if the driver's careless act—namely, running too fast, and in consequence colliding with a horse and buggy upon the

152 F.—31

highway—can properly be said to be within the scope of the driver's employment, taking into consideration also the fact that the injury was done while the driver, for a purpose of his own, was deviating from the ordinary route. Upon the question suggested by these facts, the authorities cannot be reconciled. They are collected in an exhaustive note to Ritchie v. Waller, 27 L. R. A. 161, 63 Conn. 155, 28 Atl. 29, 38 Am. St. Rep. 361, and in an earlier discussion of the same subject in the note to Ware v. Canal Co., 35 Am. Dec. 192, 15 La. 169. In view of the numerous and elaborate opinions dealing with the subject of the master's liability under such circumstances, which are to be found in both the English and the American reports, it would be superfluous for me to marshal the arguments that have been put forth on one side and the other, and to repeat the reasons that commend themselves to me as the weightier. Reference to these arguments has already been made in the notes just referred to, and further consideration of the subject may also be found in 20 Amer. & Eng. Enc. of Law (2d Ed.) p. 163, and in the various text-books upon torts, and upon the relation of master and servant.

There is no serious dispute about the general rules that govern a master's liability. They are well expressed in the following quotation from the note in 35 Am. Dec.:

Page 192. "The master is liable for the wrongful and negligent acts of his servant, performed while engaged in the pursuit of the master's business, within the scope of his employment, or which, from all the circumstances, may be reasonably, fairly, or necessarily included, or by implication embraced, within the objects of the business the execution of which has been confided to the servant's charge. O'Connell v. Strong, Dudley's Law (S. C.) 265; Andrus v. Howard, 36 Vt. 248, 84 Am. Dec. 680; Luttrell v. Hazen, 3 Sneed, 20; Patten v. Rea, 2 C. B. (N. S.) 606; Jones v. Glass, 13 N. C. 305; Priester v. Augley, 5 Rich. Law (S. C.) 44; Wanstall v. Pooley, 6 Cl. & Fin. 910, note; Gass v. Coblens, 43 Mo. 377; Shaw v. Reed, 9 Watts & S. 72; Smith v. Webster, 23 Mich. 298; Allison v. Western N. C. R. R., 64 N. C. 382; Chicago, St. Paul & F. R. R. v. McCarthy, 20 Ill. 385, 71 Am. Dec. 285; Stone v. Cheshire R. R., 19 N. H. 427, 51 Am. Dec. 192; Carman v. S. & I. R. R., 4 Ohio St. 399; Corrigan v. Union Sugar Refinery, 98 Mass. 577, 96 Am. Dec. 685; Byram v. McGuire, 3 Head (Tenn.) 530; Barlow v. Emmert, 10 Kan. 358; Tuel v. Watson, 47 Vt. 634. The liability of the master in these cases proceeds from the maxim: 'Qui facit per alium facit per se.' The general rule expressed above is permanently established. The only disagreement manifested by the authorities is in regard to the manner in which the principle governing cases of this character is to be applied to meet the special exigencies of particular cases. The liability of one, who has created an agency, or authorized an act, for all the consequences which may ensue from the exercise of the one, or the performance of the other, is undisputed. This liability depends, however, upon the existence of a particular relation. The principal question arising in cases involving the liability of one person for the wrongful or tortious act of another, is, whether the particular act, out of which the injury complained of arose, was either expressly or impliedly authorized by the person whose accountability it is sought to establish."

Page 194. "Servant's deviation from the business of his master for the sake of accomplishing a personal or individual object, disconnected with his master's business, will relieve the master from liability for injuries occasioned by the servant's wrongful or negligent acts committed while such deviation continued. The question, how far a servant's willful and malicious act is deemed to be by implication a departure from his master's business, is considered in another portion of this note. If a servant abandons or departs from the business of his master and engages in some matter suggested solely by his own pleasure or convenience, or pursues some object which relates to an end or purpose

which may be said to be the servant's individual and exclusive business, and, while so engaged, commits a tort, the master is not answerable, although he was using his master's property, and although the injury could not have been caused without the facilities afforded to the servant by reason of his relations to his master."

With these rules no one quarrels. The difficulty has been, to determine whether they are applicable to a given state of facts, and upon a question of this kind opinions will always differ. To take the case in hand, it would be easy to cite decisions that hold the master to be liable under similar or analogous facts, and it would be just as easy to cite cases—for example, the recent case of McCarty v. Timmins, 178 Mass. 378, 59 N. E. 1038, 86 Am. St. Rep. 490—in which his liability has been denied. I shall not extend this opinion by taking up either class of decisions, but shall content myself with saying that my opinion is against the master's liability under the facts now before the court. As it seems to me, the driver had temporarily abandoned his employment, and had gone off upon an expedition of his own, for a purpose in no way connected with his duty, but, on the contrary, opposed thereto, and I do not think that he could bind his master while he was engaged about his private affairs. Of course, he had no express authority to turn back for such a purpose, and I am unable to see upon what ground the master's assent to his deviation can be fairly implied.

In each case judgment may be entered for the defendant, notwithstanding the verdict.